IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C/A No. 3:16-cv-112-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SATCHER PROPERTIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

WHEREAS, the Plaintiff, the United States of America ("United States"), at the request of the Secretary of the United States Department of the Army, acting through the United States Army Corps of Engineers ("Corps"), has filed a Complaint in this action concurrently with the lodging of this Consent Decree, alleging that Defendant, Satcher Properties, LLC ("Defendant"), violated Clean Water Act ("CWA") section 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344;

WHEREAS, the Complaint alleges that Defendant violated CWA section 301(a) by discharging dredged or fill material into waters of the United States in Lexington County, South Carolina, without authorization by the United States Army Corps of Engineers;

WHEREAS, the Complaint alleges that Defendant violated CWA section 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344, in not obtaining a permit from the United States Army Corps of Engineers prior to discharging dredged or fill material into waters of the United States in Lexington, South Carolina;

WHEREAS, the Complaint requests that the Court award injunctive relief and civil penalties;

1

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the United States and Defendant, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, before the taking of any testimony upon the pleadings, without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and upon consent of the Parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION, VENUE, AND SUFFICIENCY OF COMPLAINT

1.      This Court has jurisdiction over the subject matter of these actions and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and CWA section 309(b), 33 U.S.C. § 1319(b)

2.      Venue lies in the District of South Carolina pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c).

3.      For purposes of this Consent Decree, and any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree, over any such action to enforce this Consent Decree, and over Defendant, and Defendant consents to venue in this judicial district.

4.      For purposes of this Consent Decree, and any action to enforce this Consent Decree, the Parties agree, and the Court finds, that the Complaint states claims upon which relief can be

granted pursuant to CWA sections 301(a), 309(d), and 404 of the CWA, 33 U.S.C.

§§ 1311(a), 1319(d), and 1344.

## II. APPLICABILITY

5.      This Consent Decree applies to and is binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law whether or not such entity or person has notice of this Consent Decree.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including any contractor or consultant retained to perform any work.  Defendant shall condition any such contract upon performance of any work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any officers, directors, employees, agents, contractors, or consultants to take any actions necessary to comply with this Consent Decree.

8.      Defendant represents that, on or before the execution of this Consent Decree, he has obtained all interests or rights necessary to perform any work in Boggy Branch and wetlands adjacent to Boggy Branch (hereinafter referred to as "Boggy Branch") in which the violation is alleged to have occurred; to monitor and maintain relevant portions of the Boggy Branch; to submit reports regarding the condition of Boggy Branch; and to provide the United States with a right of entry as set forth in Section VII of this Consent Decree.   No subsequent transfer by Defendant of those interests or rights shall alter or relieve Defendant of the obligations in this Consent Decree to perform any work in Boggy Branch; to monitor and maintain relevant portions of Boggy Branch;

to submit reports regarding the condition of Boggy Branch; and to provide the United States with a right of entry as set forth in Section VII of this Consent Decree.   At least thirty (30) Days prior to any transfer of those interests or rights, the transferring Defendant shall provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States at the addresses specified in Section XI of this Consent Decree.   As a condition of any such transfer, the transferring Defendant shall reserve all rights necessary to comply with this Consent Decree.   In the event of such transfer, the transferring Defendant shall provide a true copy of this Consent Decree to the transferee(s) and shall simultaneously notify the United States at the addresses specified in Section XI of this Consent Decree that such notice has been given.   Any transfer by Defendant of any of Defendant's interests or rights in the Site (as defined herein below), or any other site relevant to any work in Boggy Branch without complying with this Paragraph constitutes a violation of this Consent Decree.

## III. DEFINITIONS

9.     Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the statute or such regulations, unless otherwise provided in this Consent Decree.

10.     Whenever the terms set forth below are used in this Consent Decree, the definitions in the following subparagraphs shall apply.

a.     "Unauthorized Work" shall include all work performed by the Defendant directly or indirectly for which the United States has alleged a violation of the CWA, including the following:

**Impact Site 1:    Wetland Fill**- Approximately 2.75 acres of wetlands, waters of the United States, were mechanized land cleared and filled.   Tributaries 1A and 1B, also waters of the United

4

States, within the wetland were piped approximately 1,139 linear feet. These tributaries flow into an impoundment of the tributary named Boggy Branch. All vegetation was removed and the area completely filled.

**Impact Site 2:  Expansion of Impoundment**- Construction resulting in 2.32 acres of wetlands abutting Boggy Branch being filled, and impacts to two tributaries, 2A and 2B, all of which are waters of the United States:  The tributary impacts consist of 341 linear feet of Tributary 2A, which is the tributary named "Boggy Branch," and 220 linear feet of Tributary 2B, an unnamed tributary that flows into the tributary named "Boggy Branch."

**Impact Site 3:  Embankment Modification-** The embankment was extended from 295 linear feet to 470 linear feet, resulting in an impoundment being expanded from 2 acres to approximately 4 acres. The embankment modification and resultant impacts to the impoundment included impacts to uplands not subject to the Clean Water Act.

**Impact Site 4:  Road Modification-** An existing 175 linear foot road was expanded (widened) resulting in fill placement into waters of the United States along the entire length.  Impacts are estimated to be less than .10 acres of wetland fill.

b.  "Boggy Branch," a water of the United States, shall mean the body of water referred to above as Tributaries 1A, 1B, 2A, and 2B, and any and all wetlands adjacent thereto, that flows into Twelve Mile Creek which flows into Saluda River, a Traditional Navigable Water (TNW), of which all are waters of the United States; the approximate location of impacted portions of Boggy Branch is outlined in red on Appendix A of this Consent Decree.  Where the Corps is referencing the named Tributary "Boggy Branch" in its individual capacity, it will so specify.

c.  "Site" or "Satcher Property" shall mean the Defendant's real property generally

5

located south of Wing Hill Drive, between Storey Road and Branham View Road, and outlined in yellow on Appendix A of this Consent Decree.

d.      "CWA" shall mean the Clean Water Act, 33 U.S.C. §§ 1251-1387.

e.      "Complaint" shall mean the Complaint filed by the United States in this action.

f.      "Consent Decree" shall mean this Consent Decree; all Appendices attached hereto and listed in Section XX of this Consent Decree; all Deliverables approved by the Corps in accordance with Section XIV of this Consent Decree; and all modifications made effective in accordance with Section XV of this Consent Decree.

g.      "Corps" shall mean the United States Army Corps of Engineers and any of its successor departments or agencies.

h.      "Day" shall mean a calendar day unless expressly stated to be a business day.   In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

i.      "Defendant" shall mean Satcher Properties, LLC.

j.      "Deliverable" shall mean any work plan, engineering reports and plans, monitoring and maintenance plan, monitoring and maintenance report, mitigation credit purchase proposal, or other document that is submitted to the Corps for its review and approval pursuant to Section XIV of this Consent Decree, including but not limited to the Jurisdictional Determination, the Restoration Plan, to include a Mitigation Plan and Monitoring and Maintenance Protocol, and Environmental Compliance Promotion Project.

k.      "Effective Date" shall mean the date on which this Consent Decree is entered by

6

the Court.

l.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

m.      "Parties" shall mean the United States and Defendant.

n.      "Section" shall mean, except when citing a provision of the CWA or regulations, a portion of this Consent Decree identified by a Roman numeral.

o.      "United States" shall mean the United States of America, acting on behalf of the Corps.

## IV. GENERAL PROVISIONS

11.      This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and civil penalties alleged in the Complaint, subject to Defendant's compliance with this Consent Decree.

12.      It is the express purpose of the Parties in entering this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. § 1251.

13.      Except as provided in Paragraph 23(f) herein, this Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to any federal, state, or local laws or regulations.   This Consent Decree shall not limit the ability of the Corps to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the United States Environmental Protection Agency's ability to exercise its authority pursuant to CWA section 404(c), 33 U.S.C. § 1344(c).   The Corps will consult with the United States Environmental Protection Agency and other federal and state agencies, as appropriate, in evaluating any deliverable or the after-the-fact

(ATF) application submitted to the Corps under this Consent Decree.

14.    This Consent Decree in no way affects or relieves Defendant of the responsibility to comply with any applicable federal, state, or local law, regulation or permit.

15.    This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

16.    The United States reserves any and all legal and equitable remedies available to enforce this Consent Decree and applicable law.    The United States further reserves all legal and equitable remedies available to address any imminent and substantial endangerment to public health or welfare or the environment, whether related to the alleged violations addressed in this Consent Decree or otherwise.    This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 11 of this Section of this Consent Decree.    In any subsequent proceeding initiated by the United States, Defendant shall not assert, and may not maintain, any defense or claim based on the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim splitting, or other defenses based on any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims resolved by this Consent Decree as specified in Paragraph 11 of this Section of this Consent Decree.

17.    Except as provided in Section I of this Consent Decree, nothing in this Consent Decree shall constitute an admission of fact or law by any party.

## V. <u>SPECIFIC PROVISIONS</u>

18.     Within thirty (30) Days of the Effective Date of this Consent Decree, Defendant shall pay a civil penalty to the United States in the amount of $2,500 dollars.

19.     Payment to the United States shall be made in accordance with the written instructions to be provided to Defendant by the United States Attorney's Office.   Upon payment, Defendant shall provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.   Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section X in calculating any federal income tax owed.

20.       Environmental Compliance Promotion Project. The Defendant agrees to work with the United States Attorney's Office (USAO) and the Corps on the planning and development of a proposal for an Environmental Compliance Promotion Project ("Compliance Project") designed to provide training and technical support to the regulated community with a goal of reducing violations of Section 404 of the Clean Water Act. It is the intent of the Parties that the Compliance Project will be staged in several locations on multiple days as determined by the COE and USAO in consultation with the Defendant and outlined in the Compliance Project Plan.    The Compliance Project Plan is due 90 days from the entry of this Consent Decree.    The Defendant agrees that whenever Defendant publicizes the Compliance Project, the publication shall include a statement that the Project is being undertaken as part of the settlement of this enforcement action. If Defendant fails to complete the Compliance Project as outlined in the Compliance Project Plan, then the Defendant shall pay stipulated penalties for the failure to complete the Compliance Project.

The Defendant agrees to pay for costs associated with the Compliance Project up to and including $7,500. The Defendant has no obligation for costs associated with the Compliance Project in excess of $7,500. The designated funds will be expended solely for the Compliance Project and will include fees associated with advertising, printing, indexing, binding and other reasonable conference costs. The Defendant will account for costs expended under this paragraph by submitting to the United States a report certified by an appropriate corporate official evidencing expenditure. If the Defendant desires to utilize its own employees, consultants, and equipment to perform any of the tasks associated with the development of the educational program, to obtain credit for the expenditure, the Defendant must submit to the United States and obtain approval from the United States for time and expense records. Any costs claimed by Defendant under this paragraph shall relate directly to the educational program and not to the restoration or after-the-fact permit.

INJUNCTIVE RELIEF

21.    Prohibitory Injunction:    Except as in accordance with this Consent Decree, Defendant is enjoined from discharging any pollutant into Boggy Branch, any segment of Boggy Branch, or any body of water that contributes its flow to Boggy Branch or any segment of Boggy Branch, unless such discharge complies with the provisions of the CWA and its implementing regulations.

22.    Mandatory Injunction:    Except as provided in Paragraph 24 of this Consent Decree, Defendant shall restore the Site in accordance with Paragraph 23 of this Consent Decree. The Defendant, through the Defendant's representatives and/or attorneys, shall attend an in-person meeting with the Corps to discuss the specifics that will be required for expected submittals. The

meeting shall occur at a time that is mutually agreeable to all parties but within fifteen 15 days of the Effective Date of this Consent Decree.

23.    Restoration of Site:

a.    Within ninety (90) days of the effective date of this Consent Decree, Defendant shall submit to the Corps, for its review as a Deliverable, a comprehensive Restoration Plan to restore all areas of the Site, directly or indirectly affected by Defendant's Unauthorized Work.

b.    The Restoration Plan shall provide for the complete removal of any and all fill or dredge material discharged or placed for or associated with or resulting from the Unauthorized Work, including deadlines for such removal.

c.    The Restoration Plan shall provide for the removal of fill material and pipes associated with the work. After the fill and pipes have been removed, the areas will be planted with native vegetation at the Site and areas off-Site that have been impacted directly or indirectly by the Unauthorized Work, including deadlines for such planting.

d.    The Restoration Plan shall include a Monitoring and Maintenance Protocol with specific performance metrics to measure success, including deadlines for the submission of monitoring reports.

e.    The Restoration Plan shall include a Mitigation Plan to compensate for the loss of waters of the United States, as well as any permanent impacts to Boggy Branch resulting directly or indirectly from the Unauthorized Work.  The Mitigation Plan shall be consistent with the Corps' 2008 Final Compensatory Mitigation Rule and the most current version of the Charleston District's "Guidelines for Preparing a Compensatory Mitigation Plan" and other applicable regulations.  The Mitigation Plan shall specify the amount and number of credits that Defendant

11

shall secure~~purchase from an approved mitigation bank or banks, including a deadline for such purchase~~.  After the purchase of any mitigation credits, Defendant shall promptly provide a copy of the purchase receipt to the United States at the addresses specified in Section XI of this Consent Decree.

f.      The Parties acknowledge that, upon entry of this Consent Decree, Nationwide Permit 32, found at 77 Fed. Reg. 10,184 (Feb. 21,2012), will authorize, subject to the conditions provided in the Nationwide Permit and this Consent Decree, the work done under the Restoration Plan provided for in Paragraph 23 and approved under this Consent Decree.   This Subparagraph f specifically does not apply to any work outlined in or performed under any ATF application submitted under Paragraph 24 below.

24.     Under_After-the-Fact Permit Application:

a.      The requirements of Paragraph 23 of this Consent Decree shall be suspended with regard to any of Sites 1 through 4 as defined herein under "Unauthorized Work" if Defendant submits to the Corps, within ninety (90) days of the effective date of this Consent Decree, a complete application for an after-the-fact or ATF CWA section 404 permit (which shall not be regarded as a Deliverable).

b.      The suspension of the requirements of Paragraph 23 shall continue throughout the Corps' decision-making process on the ATF permit application only with regard to any of the individual Sites 1 through 4 for which Defendant submits an ATF CWA section 404 permit application.   In the event that the Corps denies the ATF permit application on any of the individual Sites 1 through 4, the suspension shall lift automatically on the eleventh (11th) day following the Corps' final decision to deny the ATF permit application in whole or part. In the event that the

Corps proffers an ATF permit to Defendant for any of the individual Sites 1 through 4, the suspension shall continue indefinitely with regard to the individual Sites 1 through 4 approved for an ATF permit provided that Defendant fully complies with the ATF permit as proffered.

c.     Defendant shall cooperate with the Corps with respect to any request for information or any other reasonable request made by the Corps through the permit process.

d.     The ATF permit application shall include a Mitigation Plan to compensate for the loss of waters of the United States as to each of the Sites 1 through 4 addressed in the ATF permit application, as well as any permanent impacts to the Tributary resulting directly or indirectly from the Unauthorized Work addressed in the ATF permit application.   The Mitigation Plan shall be consistent with the Corps' 2008 Final Compensatory Mitigation Rule and the most current version of the Charleston District's "Guidelines for Preparing a Compensatory Mitigation Plan" and other applicable regulations.   The Mitigation Plan shall specify the amount and number of credits that Defendant shall purchase from an approved mitigation bank or banks, including a deadline for such purchase.   In the event that the Corps issues an ATF permit requiring the purchase of mitigation credits, Defendant shall, promptly after the purchase of any mitigation credits, provide a copy of the purchase receipt to the United States at the addresses specified in Section XI of this Consent Decree.

g.     Recognizing that the ATF permit application is not a Deliverable under the terms of the Consent Decree, Defendant shall have the remedies, rights, and due process with regard to the ATF permit application to which the Defendant would be entitled absent this Consent Decree, but shall not have any additional rights, remedies, or due process with regard to the ATF permit application under this Consent Decree   The intent of this paragraph is to preserve for the Parties

their pre-existing administrative and judicial review rights associated with the ATF permit application, and to except the ATF permit process from the Dispute Resolution provision of this Consent Decree.

h.      This Consent Decree does not in any way limit the Corps' exercise of its lawful authority in processing the ATF permit application and the ATF permit application is not subject to Dispute Resolution under this Consent Decree.

25.     In evaluating any Deliverable or ATF permit application submitted to the Corps under this Consent Decree, the Corps will consult with the United States Environmental Protection Agency and other federal and state government agencies, as appropriate.

## VI. REPORTS

26.     All reports submitted by Defendant pursuant to this Consent Decree, including any Deliverable approved by the Corps, shall be submitted to the Corps at the address provided in Section XI, unless otherwise specified.

27.     Each report submitted pursuant to this Consent Decree shall be signed by Defendant or his authorized representative, and it shall include the following certification:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based upon personal knowledge or my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete."

14

28.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CWA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

29.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. RETENTION OF RECORDS AND RIGHT OF ENTRY

30.     Until three (3) years after the termination of this Consent Decree pursuant to Section XVI, Defendant shall retain, and shall instruct his contractors, consultants, and other agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in his or his contractors' or other agents' possession or control, or that come into his contractors' or other agents' possession or control, and that demonstrate Defendant's performance of his obligations under this Consent Decree.   This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.   At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

31.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Site, upon presentation of credentials, to assess Defendant's compliance with this Consent Decree and to inspect and review any records required to be kept under this Consent Decree and/or the CWA.   Specifically, the United States may:

a.     monitor work required by this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant, including his representatives, contractors, or consultants; and

d.      obtain evidence, including documents, photographs, GPS, flow measurement, and other similar data.

e.      Upon request, the United States shall, within a reasonable time, produce and permit Defendant to inspect, copy, test, or sample any non-privileged documents, photographs, measurements, or other data collected as a result of such visit.

32.     This Consent Decree in no way limits or affects any other rights of entry and inspection, or any rights to obtain information, held by the United States, including the Corps, pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. DISPUTE RESOLUTION

33.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section ("Dispute Resolution") shall be the exclusive mechanism for Defendant to resolve all disputes arising under or with respect to this Consent Decree.

34.     Any dispute Defendant has that is subject to Dispute Resolution shall first be the subject of informal negotiations.   The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute, pursuant to Section XI.   Such Notice of Dispute shall state clearly the matter in dispute.   The period of informal negotiations shall not

exceed twenty-one (21) days from the date the dispute arises, unless that period is modified in writing by the United States.   If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) days after the conclusion of the informal negotiation period, Defendant files with the Court a motion for judicial resolution of the dispute.

35.    In any dispute submitted to the Court for resolution pursuant to this Section, Defendant shall have the burden of proving by a preponderance of evidence that the United States' position is not in accordance with the objectives of this Consent Decree and the CWA, and that Defendant's position will achieve compliance with the terms of this Consent Decree and the CWA.

36.    The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree.   Stipulated penalties and interest, if applicable to the disputed matter, shall continue to accrue from the first day of violation, but payment shall be stayed pending resolution of the dispute as provided in Section X.   If Defendant does not prevail on the disputed issue, stipulated penalties, and interest, if applicable, shall be assessed and paid as provided in Section X.

## IX. FORCE MAJEURE

37.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any person or entity controlled by Defendant, or of Defendant's contractors or consultants that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any

17

such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the extent possible.   "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

38.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice to the United States, as specified in Section XI, within 72 hours of when Defendant first knew or should have known that the event might cause a delay.   Within three (3) days after the initial notice, Defendant shall provide in writing to the United States, in accordance with Section XI, an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if the Defendant intends to assert such a defense; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. The United States may, in its unreviewable discretion, extend the time within which notice must be given.   No such extension shall be effective unless it is in writing.   Defendant shall include with any written notice required by this Section all available documentation supporting the claim that the delay was attributable to a force majeure event and such notice shall be signed and certified as set forth in Paragraph 27 of this Consent Decree.   Failure to comply with the requirements of this Section shall preclude Defendant from asserting any defense of force majeure for that event, and for any additional delay caused by such failure.   Defendant shall be deemed to know of any circumstance of which Defendant, any person or entity controlled by Defendant, including

Defendant's contractors and consultants, knew or should have known.

39.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event may be extended by the United States for such time as is necessary to complete those obligations.   An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.

40.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or does not agree to the extension of time sought by Defendant, then the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section VIII of this Consent Decree.

41.     If Defendant invokes Dispute Resolution under Section VIII of this Consent Decree, Defendant shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a force majeure event; the number of days of delay or anticipated delay that was or will be caused by such force majeure event; that the duration of the delay or the extension sought was or will be warranted under the circumstances; that Defendant could not have foreseen and prevented such delay; that Defendant, including his contractors and consultants, exercised best efforts to prevent, avoid, minimize and mitigate the delay and its effects; and that Defendant complied with the requirements of this Section.

## X. STIPULATED PENALTIES

42.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree in accordance with this Section, unless excused under Section IX (Force

Majeure).   A violation includes failing to perform any obligation required by the terms of this Consent Decree, including the terms of any Deliverable or modification approved under this Consent Decree as well as the obligation to timely submit a complete ATF application, within the specified time schedules established by or approved under this Consent Decree.

43.     Stipulated penalties shall accrue for violations of this Consent Decree in the amount of two hundred dollars ($200) per day for each violation.

44.     Subject to a force majeure event as set forth in Section IX of this Consent Decree, stipulated penalties under this Section shall begin to accrue on the day a violation occurs and shall continue to accrue until the violation ceases.   Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

45.     Except as provided in Paragraphs 46 and 47 below, Defendant shall pay any stipulated penalty within thirty (30) days of receiving the United States' written demand. Defendant shall make any such payment in accordance with written instructions to be provided by the United States.   Upon any such payment, Defendant shall provide written notice, at the addresses specified in Section XI of this Consent Decree.

46.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties that have accrued under this Consent Decree.

47.     Any disputes concerning the amount of stipulated penalties or the underlying violation that gives rise to the assessment of stipulated penalties are subject to the Dispute Resolution provisions of Section VIII.   Stipulated penalties and any applicable interest shall continue to accrue as provided in Paragraph 44, but need not be paid until the following:

a.     If the dispute is resolved by agreement between the Parties, Defendant shall pay the

amount due under such agreement, together with any applicable interest, to the United States within thirty (30) days of the effective date of the agreement.

b.      If the dispute is taken to the Court, Defendant shall pay all accrued penalties determined by the Court to be owing, together with any applicable interest, within thirty (30) days of receiving the Court's decision, except as provided in subparagraph c, below.

c.      If any party appeals the Court's decision to the Court of Appeals (or beyond), Defendant shall pay all accrued penalties determined to be owing, together with any applicable interest, within fifteen (15) days of receiving the final appellate decision.

48.     If Defendant fails to pay stipulated penalties in accordance with this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.   The interest shall be computed daily from the time the payment is due until the date the payment is made.   The interest shall also be compounded annually.   Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

49.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.

21

## XI. ADDRESSES

50.    All notices and communications required under this Consent Decree shall be made

to the Parties through each of the following persons and addresses:

    a.    TO THE UNITED STATES:

        i.    TO THE UNITED STATES ATTORNEY:

            United States Attorney
            1441 Main Street
            Suite 500
            Columbia, SC 29201
            (803) 929-3000 [ph]
            Attn:   Beth Drake
            Beth.Drake@usdoj.gov

        iii.    TO CORPS:

            U.S. Army Corps of Engineers
            Attn: Brice McKoy
            1835 Assembly Street, Room 865 B1
            Columbia SC, 29201
            (803) 253-3994 [ph]
            Peter.B.McKoy@usace.army.mil

    b.    TO DEFENDANT:

        i.    Tommy Lavender, Esq.
            Joan Hartley, Esq.
            Nexsen Pruitt, LLC
            P.O. Drawer 2426
            Columbia, SC 29202-2426
            (803)540-2129
            jhartley@nexsenpruet.com
            tlavender@nexsenpruet.com

51.    Any party may, by written notice to the other party, change its designated notice

recipient or notice address provided above.

52.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII. COSTS OF SUIT

53.     Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.   Should Defendant subsequently be determined by the Court to have violated this Consent Decree, Defendant shall be liable for any costs or attorney's fees incurred by the United States in any action against Defendant for noncompliance with or enforcement of this Consent Decree.

## XIII. PUBLIC COMMENT

54.     The Parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. Part 50.7, which provides for public notice and comment.   The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts or considerations which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.   Defendant agrees not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.   Defendant consents to entry of this Consent Decree in its present form without further notice.

## XIV. APPROVAL OF DELIVERABLES

55.     After Defendant submits any Deliverable, the Corps shall in writing:    (a)approve the Deliverable; (b) approve the Deliverable upon specified conditions; (c)approve part of the Deliverable and disapprove the remainder; or (d)disapprove the Deliverable.

23

56.     If the Deliverable is approved pursuant to Paragraph 55(a) above, Defendant shall take all actions required by the Deliverable, in accordance with the schedules and requirements of the Deliverable, as approved.   If the Deliverable is conditionally approved or approved only in part, pursuant to Paragraph 55(b) or (c), Defendant shall, upon written direction from the Corps, take all actions required by the approved Deliverable that the Corps determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section VIII of this Consent Decree (Dispute Resolution).

58.     If the Deliverable is disapproved in whole or in part pursuant to Paragraph 55(c) or (d), Defendant shall, within twenty (20) days, or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Deliverable, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs in this Section of the Consent Decree.   If the resubmitted Deliverable is approved in whole or in part, Defendant shall proceed in accordance with Paragraph 56 above.   If the resubmitted Deliverable is disapproved in whole or in part, the Corps may again require Defendant to correct any deficiencies in accordance with the preceding Paragraphs in this Section of the Consent Decree, or the Corps may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution under Section VIII of this Consent Decree and the right of the Corps to seek stipulated penalties under Section X of this Consent Decree.   Any Corps-corrected Deliverable shall be incorporated into and become enforceable under this Consent Decree and shall be implemented by Defendant according to the terms of such Deliverable, subject to Defendant's right to invoke Dispute Resolution under Section VIII of this Consent Decree.

## XV. MODIFICATION

59.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties.   In addition, if the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.   Non-material changes to this Consent Decree may be made by written agreement of the Parties without Court approval.

## XVI. TERMINATION

60.     After Defendant has completed the requirements of Section V of this Consent Decree; paid any accrued stipulated penalties not waived or reduced by the United States pursuant to Paragraph 46 of this Consent Decree; and submitted all reports due pursuant to Section VI of this Consent Decree, Defendant may submit to the United States, at the Addresses specified in Section XI of this Consent Decree, a Request for Termination, stating that Defendant has satisfied those requirements, together with supporting documentation.

61.     Following receipt by the United States of Defendant's Request for Termination, the Parties may confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.   If the United States agrees that the Consent Decree may be terminated, the United States shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

62.     If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section VIII of this Consent Decree.   However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Section VIII of this Consent Decree, until ninety (90) days after service of its Request for Termination.

63.    Termination of this Consent Decree does not extinguish the prohibitory injunction set forth in Paragraph 21 of this Consent Decree.

64.    Termination of this Consent Decree does not discharge Defendant of his obligations set forth in Section VII of this Consent Decree.

## XVII. SIGNATORIES/SERVICE

65.    Each undersigned representative of Defendant and the United States Attorney's Office certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he or she represents to this document.

66.    This Consent Decree may be signed in counterparts, such counterpart signature pages shall be given full force and effect, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XVIII. INTEGRATION

67.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes any prior agreements and understandings, whether verbal or written, concerning the settlement embodied herein.   Other than the Appendix referenced in Section XX of this Consent Decree, Deliverables approved by the Corps in accordance with Section XIV of this Consent Decree, and modifications made effective in accordance with Section XV of this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise,

constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XIX. FINAL JUDGMENT AND RETENTION OF JURISDICTION

68.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment, and the Clerk of Court may administratively close this case.

69.    Subject to the termination provisions of this Consent Decree (Section XVI), this Court retains jurisdiction over this action for purposes of resolving disputes arising under this Consent Decree, or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XX. APPENDICES

70.    The following Appendixes attached to and part of this Consent Decree:

Appendix A:   Boggy Branch and Site

**IT IS SO ORDERED.**

March 3, 2016                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                        United States District Judge

27

WE HEREBY CONSENT to the entry of this Consent Decree, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

William N. Nettles
United States Attorney
District of South Carolina
Wells Fargo Building
1441 Main Street, Suite 500
Columbia, South Carolina
Federal ID No. 6586
803-929-3000

Beth Drake
First Assistant United States Attorney
District of South Carolina
·Wells Fargo Building
1441 Main Street, Suite 500
Columbia, South Carolina
Federal ID No. 5598
803-929-3061

OF COUNSEL:
Brian P. Nutter, Attorney
694. Hagood Ave.
United States Army Corps of Engineers
Charleston, S.C.29403

Matthew W. Luzzatto, P.E., PMP
Lieutenant Colonel, U.S. Army
Commander and District Engineer
United States Corps of Engineers
USACE-SAC-RD-NW
1835 Assembly Street Rm. 865 B-1
Columbia, SC 29201

FOR DEFENDANT SATCHER PROPERTIES, LLC

Name: Benjamin W. Satcher

President, Satcher Properties, LLC

W. THOMAS LAVENDER, JR
Attorney for Satcher Properties, LLC
Federal ID No. 2689

JOAN WASH HARTLEY
Attorney for Satcher Properties, LLC
Federal ID No. 9548
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Columbia, SC 29201

# Appendix A- Impact Sites



**Site 1:** Filled 2.75 acres of wetlands and piped 1,139 linear feet of tributaries.

**Site 2:** Expanded an impoundment impacting 2.32 acres of wetlands and 561 linear feet of tributaries.

**Site 3:** Extended and embankment from 295 linear feet to 470 linear feet increasing pond from 2 to 4 acres. No additional impacts

**Site 4:** Filled .10 acres of wetlands by widening 175 linear feet of road in wetlands.